**Hartford Accident and Indemnity Company, a Corporation, Plaintiff-Appellant, v. Frank Holada and Albie Holada, Defendants-Appellees.**

**Gen. No. 53,827.**

First District, Fourth Division.

July 31, 1970.

Frank Glazer, of Chicago (John W. Purney, of counsel), for appellant.

473

Richard F. Gallagher, Russell H. Petrak, Gallagher & Petrak, of Chicago, for appellees.

MR. JUSTICE ENGLISH delivered the opinion of the court.

Plaintiff brought this declaratory judgment action for construction of a policy of automobile insurance issued by plaintiff to defendant Frank Holada. The prayer of the complaint was that the court determine that plaintiff owed no coverage to defendants under the provisions of the policy applicable to uninsured motorists. On defendants' motion, the trial court dismissed the cause of action, and plaintiff appeals.

For purposes of this review, the facts are to be taken from the pleadings. On November 23, 1963, defendant Albie Holada, wife of the named insured, Frank Holada, was crossing the street near Kedzie Avenue and 82nd Street when she was struck and injured by a motor scooter operated by one Richard Christ, who was uninsured as to liability. On November 22, 1965, defendants filed a lawsuit against Christ who filed an answer and the suit is still pending. On November 14, 1966, defendants filed a demand for arbitration with the American Arbitration Association naming the instant plaintiff as respondent. On December 30, 1966, plaintiff filed this action.

The pertinent paragraphs of the insurance policy read:

### Section III—Protection Against Uninsured Motorists

1. *Coverage D—Uninsured Motorists (Damages for Bodily Injury):* To pay all sums which the insured or his legal representative shall be *legally entitled* to recover as damages from the owner or operator of an *uninsured automobile* because of bodi-

ly injury, sickness or disease, including death resulting therefrom, hereinafter called "bodily injury," sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such *uninsured automobile;* provided, for the purposes of this coverage, determination as to whether the insured or such representative is *legally entitled* to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration. (Emphasis supplied.)

No judgment against any person or organization alleged to be legally responsible for the bodily injury shall be conclusive, as between the insured and the company, of the issues of liability of such person or organization or of the amount of damage to which the insured is *legally entitled* unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the company. (Emphasis supplied.)

2. *Definitions:* The definitions under Section I, except the definition of "insured," apply to Section III, and under Section III:

*"insured"* means:

(a) the named insured and any relative;

. . . . . .

*"uninsured automobile"* includes a trailer of any type and means:

(a) an automobile or trailer with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with re-

475

spect to any person or organization legally responsible for the use of such automobile, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder or

(b) a hit-and-run automobile;

but the term "uninsured automobile" shall not include:

(1) an insured automobile or an automobile furnished for the regular use of the named insured or a relative,

(2) an automobile or trailer owned or operated by a self-insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law or any similar law,

(3) an automobile or trailer owned by the United States of America, Canada, a state, a political subdivision of any such government or an agency of any of the foregoing,

(4) a land motor vehicle or trailer if operated on rails or crawler-treads or while located for use as a residence or premises and not as a vehicle, or

(5) a farm type tractor or equipment designed for use principally off public roads, except while actually upon public roads.

Plaintiff contends that a proper interpretation of the above language with respect to an "uninsured automobile" would exclude a motor scooter. It cites a number of cases from other states in which an "automobile" is held to be a four-wheeled vehicle, and not to include a motorcycle or motor scooter. E. g., Mittelsteadt v. Bovee, 9 Wis2d 44, 100 NW2d 376; Paupst v. McKendry, 187 Pa Super 646, 145 A2d 725; Westerhausen v. Allied Mutual Ins. Co., 258 Iowa 974, 140 NW2d 719; Beeler v.

Pennsylvania Threshermen and Farm Ins. Co., 48 Tenn App 370, 346 SW2d 457.

Defendants consider these cases irrelevant, and so do we. It can be assumed that the term "automobile" does not include a motor scooter. However, the real issue in this case does not turn on construction of that word as used in the policy, but, rather, upon the statute which requires a policy to afford protection against uninsured motorists. We refer to section 143a of the Illinois Insurance Code (Ill Rev Stats 1963, c 73, § 755a) which, at the time in question, provided in pertinent part:

> Uninsured or hit-and-run motor vehicle coverage.
>
> On and after the effective date of this amendatory Act of 1963, no policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in Section 7–203 of the "Illinois Motor Vehicle Law," approved July 11, 1957, as heretofore and hereafter amended, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of *uninsured motor vehicles* and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom, . . . . (Emphasis supplied.)

The Insurance Code does not contain a definition of the term "motor vehicle," but we take note of that statute's incorporation by reference of a provision in the Illinois Motor Vehicle Law. For this reason, as well as on general principles, we consider it appropriate to look to the latter Act for such a definition. There, we find the following:

§ 1–133. *Motor vehicle*

Every vehicle which is propelled otherwise than by muscular power, including but not limited to *motorcycles, motor-driven cycles,* pole trailers, reconstructed vehicles, road tractors, school busses, semitrailers, special mobile equipment, specially constructed vehicles, trackless trailer coaches, trailers, trucks, truck tractors. . . .

§ 1–134. *Motorcycle*

Every motor vehicle having a seat or saddle for the use of the rider and designed to travel on not more than three wheels in contact with the ground, but excluding a tractor.

§ 1–135. *Motor-driven cycle*

Every motorcycle, including every motor scooter, with a motor which produces not to exceed 5 horsepower, and every bicycle with motor attached.

Ill Rev Stats 1963, c 95½, §§ 1–133, 1–134, 1–135.

■ Even in the absence of the above statutory definitions, we consider it beyond argument that a motor scooter is a motor vehicle, and plaintiff has directed us to no contrary authority. Consequently, we are presented with a situation in which the statute requires coverage in relation to uninsured motor vehicles, but the policy in question (according to plaintiff's argument) furnishes coverage in relation to a more limited category of uninsured automobiles.

The Insurance Code contemplates just such a question and supplies the answer. Section 143 authorizes the Director of Insurance to require the filing of all policy forms with him so that he may order the discontinuance of any forms which he finds to be in violation of the Code. The section then states that nothing therein contained shall require a company such as plaintiff to obtain prior approval of its forms, nor in any way affect the legality of any policy which may have been issued in violation of

478

the Code, *"but such policies shall be subject to the provisions of section 442."* (Emphasis supplied.) Ill Rev Stats 1963, c 73, § 755(2).

Section 442 reads:

### Validation of Illegally Issued Policies

Any contract or policy of insurance . . . issued in violation of any section of this Code requiring certain provisions to be inserted therein . . . shall nevertheless be held valid but shall be construed in accordance with the requirements of the section that the said policy, application, endorsement or rider violates, and when any provision in such contract, application, endorsement or rider is in conflict with any provision of this Code, the rights, and obligations of the company thereunder shall not be less favorable to the holder of the contract and the beneficiary or annuitant thereunder than is required by the provisions of this Code applicable thereto.

Ill Rev Stats 1963, c 73, § 1054.

Without reference to this statute, the court reached the same result in Konrad v. Hartford Accident & Indemnity Co., 11 Ill App2d 503, 514, 137 NE2d 855 where it was stated:

The statutory omnibus clause, in any event, must be, under the circumstances here, considered as voluntarily adopted by the insurer and written into this policy, and if there be any real differences between that and the similar clause stated in the policy, which we doubt, the statutory omnibus clause must control.

See also ILP, Insurance, § 156.

■ As to plaintiff's primary contention, therefore, we conclude that a motor scooter must be considered as included in the policy protection against uninsured motorists.

479

Plaintiff also argues that defendants' demand for arbitration was not timely since it was filed more than two years after the occurrence—the statutory period of limitation for the filing of personal injury actions. Ill Rev Stats 1963, c 83, § 15. In addition to Section III, paragraph 1 of the policy (quoted above) which provides for arbitration as to whether the insured is "legally entitled" to recover damages from an uninsured motorist, the subject is also treated in Section III, paragraph 6 of the policy:

> *Arbitration:* If any person making claim hereunder and the company do not agree that such person is *legally entitled* to recover damages from the owner or operator of an uninsured automobile because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this Section, then, upon written demand of either, the matter or matters upon which such person and the company do not agree shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such person and the company each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this Section. (Emphasis supplied.)

There are valid answers to plaintiff's contention. First, it is to be noted that, despite numerous time limits set forth in various parts of the policy, there is no limit stated for the filing of a demand for arbitration by either party. It is only if the claimant and the company do not agree, that resort will be had to arbitration, and we conclude from this policy language that the company itself did not wish to be bound by any statute of limitations (other than the ten-year limitation for con-

480

tract actions) in working out a settlement before proceeding with arbitration.

■ Further, the second subparagraph of Section III, paragraph 1 (quoted above) contemplates the possibility that both liability and damages might be determined through litigation to judgment against the uninsured motorist. We take notice of the fact that such a procedure would take much longer than the appropriate limitation for the filing of suit in most cases.

Plaintiff cites Country Mut. Ins. Co. v. Nat. Bank of Decatur, 109 Ill App2d 133, 248 NE2d 299, but that case is distinguishable here. In Country Mutual, the claims against the uninsured motorist were for wrongful deaths under the statute establishing such actions. Ill Rev Stats 1967, c 70, §§ 1 and 2. Arbitration was not demanded until after the time for commencing a wrongful death action had expired without the filing of suit. The court set aside the arbitration award, holding that at the time of making demand therefor, the insured was not "legally entitled" to recover damages from the uninsured motorist. The court explained its reason for reaching this conclusion, saying at page 139:

> The Illinois courts consistently have held that the right of action for wrongful death is wholly statutory and that the provision in the statute creating the right that requires the action to be brought within the specified time is a condition attached to the right to sue and is not merely a statute of limitations. Hartray v. Chicago Rys., 290 Ill 85, 124 NE 849 (1919). *This is unlike a general statute of limitations which may serve as a defense to an action which a defendant may interpose or waive as he sees fit,* but it is a condition of the statute of any right to liability whatsoever. (Emphasis supplied.)

■ In our case, suit for personal injuries was filed within the statute of limitations for such an action

(two years) so it was still an open question as to whether defendants were "legally entitled" to recover damages from the uninsured motorist. Moreover, in the nature of a true statute of limitations, such as the one for personal injuries involved in this case, a defense based thereon must be affirmatively raised to be successful, and, if not so raised, the insured could still be "legally entitled" even though his lawsuit were filed after the running of the statute.

We conclude that the judgment of dismissal should be vacated and the cause remanded with directions to enter judgment in favor of defendants, finding that they are entitled to coverage under the uninsured motorist provisions of the policy, and to enter a further order directing the parties to proceed with arbitration.

Judgment vacated and cause remanded with directions.

STAMOS, P. J. and DRUCKER, J., concur.