STATE SECURITY INSURANCE COMPANY, Plaintiff-Appellant, *v.* HOWARD W. GOODMAN *et al.*, Defendants-Appellees.

(No. 71-56;

Fifth District—August 7, 1972.

Freeark, Gunn & Harvey, of Belleville, (John B. Gunn, of counsel,) for appellant.

Callis, Filcoff & Gitchoff, of Granite City, for appellees.

Mr. JUSTICE JONES delivered the opinion of the court:

Plaintiff, State Security Insurance Company appeals from a declaratory judgment rendered against it, finding that the defendant, James Goodman was covered by the uninsured motorist portion of a policy issued by it. The plaintiff insurance company's contentions are based upon the terms of the policy, an exclusion in the policy and the defendants' failure to comply with the notice provisions of the policy.

The policy itself was issued to Howard W. Goodman, a defendant and father of James Goodman. James Goodman resided in the household of Howard W. Goodman. At the time of the occurrence James Goodman was riding a motorcyle which he owned. The policy contained the following provisions relevant to this appeal:

Page 1 of the Daily or Declarations, after the policy number, sets forth the following information:

"Item 1. Address.

(there followed the name of the insured and his address)

Item 2. Policy.

(Including the date of the accident)

REPRESENTATIVE:      Agent or Broker:    Ashby Agency
Office Address:    2032 Edison
Town and State:    Granite City,
Illinois"

(then followed the name of the insurance company, coverages and a list of the covered vehicles which were two automobiles, but did not include the motorcycle).

At the bottom of the page appeared:

"Countersigned by: Maurice Jones" and in small print under this line: "Licensed Resident Agent."

The uninsured motorist provisions in this policy are included in "Family Protection Coverage" and set forth in the definitions: "Insured" means:

"(a) the named insured and any relative;

(b) any other person while occupying an insured automobile; and

(c) Any other person, with respect to damages he is entitled to recover because of bodily injury to which this Part applies sustained by an insured under (a) or (b) above."

Among the conditions applying to the Family Protection Coverage is Condition 3 dealing with notice as follows:

"Notice. In the event of an accident, occurrence or loss, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the company or any of its authorized agents as soon as practical. In the event of theft, the insured shall also promptly notify the police. If claim is made or suit is brought against the insured, he shall immediately forward to the company every demand, notice, summons or other process received by him or his representatives."

Among the exclusions to the Family Protection Coverage is Exclusion (a) as follows:

"(a) Bodily injury to an insured while occupying an automobile (other than an insured automobile) owned by the named insured or relative, or through being struck by such an automobile; * * *."

Within two weeks after the accident Howard Goodman went two or three times to the Ashby Agency and told Mrs. Ashby about the son's accident. These conversations were not recalled by either Mr. or Mrs. Ashby, Mr. Ashby being the owner and Mrs. Ashby being an employee of the Ashby Agency. Goodman claims that they advised him, in substance, that the accident was not covered because the son was on a

motorcycle not insured. Some time afterward an attorney, hired on behalf of the Goodmans, spoke with the Claims Manager of the plaintiff insurance company and approximately eighteen months after the accident the attorney wrote a letter of notice to the company.

When the defendants made a demand for arbitration before the American Arbitration Association, the plaintiff insurance company filed suit for declaratory judgment upon the ground "that the defendant James Goodman relative to the afore-described occurrence while operating the motorcycle does not come within the coverage of the afore-described insurance policy issued by State Security Insurance Company for the following reasons:" (followed by specifications (a) through (k)).

■■ The first contention of the plaintiff, based on noncompliance with the condition of notice, falls under the very unusual circumstances set forth. Unlike the usual insurance policy, this particular policy provides that notice may be given not only to the company but also to "any of its authorized agents." The complaint does not make any mention of written notice nor of any breach of contract or condition. Instead, the complaint gives as a reason why James Goodman, while operating the motorcycle, did not come within the coverage of the policy, the ground that "plaintiff first learned of an accident through a letter dated February 22, 1967, from F. L. Callis, which notice was contrary to the policy condition to give notice as soon as practicable." Failure to give notice is no reason why there is no coverage under the policy. In view of the total absence of any claim of breach of contract, the contentions with respect to notice are untenable. Had the plaintiff chosen to rely upon breach of contract, then perhaps a defense of waiver might have been raised or the question might have been presented as to the possible estoppel on the part of the plaintiff to rely on notice at the same time that it was denying that any coverage was rendered by the policy. In any case, breach of contract not having been alleged as a ground for prevailing in the trial court, it cannot be relied upon here.

■■ Further, since no question is raised that written notice was given, it would appear that timely notice was given to the Ashby Agency, which was designated in the policy as "Representative" of the plaintiff insuror. Under the rule applicable to construction of the language in insurance policies, the words of the policy permitting notice to "any of its authorized agents" would make it appear to the insured that the Ashby Agency was authorized by the company as its agent for purpose of notice. See *Lentin v. Continental Assurance Co.*, 412 Ill. 158, 105 N.E.2d 735; annot. 44 A.L.R.2d 463.

The plaintiff's contention that the Ashby Agency was not a licensed

agent, but was a broker, and as a broker the agency's authority with respect to the insuror was limited, does not escape our notice. The authority on this point, however, relates to the ability of the broker to bind coverage and to otherwise act on behalf of the company within the realm of the broker's actual authority. The particular matter of this broker's authority is concerned with apparent authority rather than actual authority. It seems to us that, by naming this broker as "representative" in the body of the policy, when the words "authorized agent" are used they are not to be considered in any legal or technical sense, but rather in their ordinary sense. This is an ancient rule which is still in current use. (See Illinois Law and Practice, Contracts, Section 218.) Therefore, it appears that the broker in this particular instance would be an authorized agent insofar as notice is concerned. We hasten to add that this should not be construed as indicating that the company was bound by the advice purportedly given by the Ashby Agency that the vehicle was not covered by the policy. The fact that this construction was placed upon the policy by the broker does, however, account for its failure to advise the insuror about the report.

■■■ We then consider the plaintiff's contention that the definition of the insured under the Family Protection Coverage did not include the defendant James Goodman. Again, construing this policy in accordance with its ordinary meaning, it clearly appears that the term "insured" means any relative of the named insured. The term "relative" is elsewhere defined to include only those relatives resident in his household. In this respect, plaintiff's argument is that the insured could have many relatives resident in his household and if they were injured outside of the covered automobiles, this would be an unfair extension of coverage because "the basis of the charge of the insurance company is on the insured automobile and not to the number of relatives in the household." On the contrary, it is a matter of common knowledge that the amount of premium charged is based upon the use made of the automobiles and various characteristics of the operators of the automobiles, and the fact that these charges are made by the plaintiff insurance company is apparent from the face of the original policy itself.

■■ Applying ordinary rules of construction, the clear language of the policy extends the uninsured motorist protection to this resident relative. To rule otherwise makes Exclusion (a) meaningless and furthermore the plaintiff relies as well upon Exclusion (a) eliminating bodily injury to an insured while occupying an automobile other than the insured automobile owned by the named insured or relative. The rule of construction applicable here is that meaning and effect, if possible, will be given to every part of the contract. *J. J. Brown Co. v. J. L. Simmons Co.*, 2

Ill.App.2d 132, 118 N.E.2d 781; *Coney v. Rockford Life Insurance Co.,* 67 Ill.App.2d 395, 214 N.E.2d 1.

This then brings us to plaintiff's final contention which is, in substance, that Exclusion (a) to the Family Protection Coverage, reading: "bodily injury to an insured while occupying an automobile (other than an insured automobile) owned by the * * * relative, * * *" excludes coverage here.

The motorcycle involved was owned by James Goodman and he was occupying it at the time of the occurrence. The plaintiff's argument is two-pronged. First, it contends that statutory provisions applicable to an insurance contract form a part of the contract and that the provisions of section 755(a) of the Insurance Code (ch. 73, sec. 755(a), Ill. Rev. Stat., 1965) formed a part of this contract. This section of the statute is the provision of the Insurance Code providing in essence that policies of insurance for liability on motor vehicles must contain an uninsured motorist provision unless the named insured rejects it in writing. Plaintiff then points out that the term "motor vehicle" is defined in section 1—133 of the Motor Vehicle Law (ch. 95½, sec. 1—133, Ill. Rev. Stat. 1965) to include motorcycles. Therefore, plaintiff reasons, an "automobile" means a "motor vehicle" and a "motor vehicle" means a "motorcycle." Plaintiff further points out that, in the case of *Hartford Accident & Indemnity Co. v. Holada,* 127 Ill.App.2d 472, 262 N.E.2d 359, where an insured was struck by a motor scooter operated by an uninsured driver, the Appellate Court of the First District there held that the term "automobile" in the policy would be construed to include the definition of motor vehicle in the Motor Vehicle Law since that law was referred to by section 755(a) of the Insurance Code. Therefore, it was said, "uninsured automobile" as included in that policy included an uninsured motor scooter.

Plaintiff further points out that in *McElyea v. Safe-Way Insurance Co.* (1970), 131 Ill.App.2d 452, 266 N.E.2d 146, held that where the plaintiff named insured was struck by a hit and run vehicle while riding a motorcycle owned by him a substantially identical provision in the policy was construed to exclude coverage to the plaintiff. The court in this case did not expressly discuss or expressly consider whether a motorcycle is an automobile within the terms of this exclusion. The defendants here argue strenuously that the word "automobile" does not include motorcycle and further that the word "automobile" can be considered ambiguous and that an ambiguity would be resolved against the insuror under existing rules of protection.

■■ In this particular respect, we do not find it necessary to consider that any ambiguity is involved. The word "automobile," where it is

undefined and unrefined, is a clear enough term of ordinary use and comprehension. It has, therefore, that ordinary, natural and commonly accepted meaning which persons, including business people, generally give to such term. There is no reason why it should be given any special meaning in the context. Thus, unless it is obvious that words used in an insurance policy are used in their technical connotation, they will be accorded the meaning which common experience imports. *Howard v. Aetna Life Insurance Co.*, 329 Ill.App. 248, 67 N.E.2d 878; *Indiana Insurance Co. v. Fidelity General Insurance Co.*, 393 Fed.2d 204.

Applying these rules then to the arguments of the plaintiff, we do not find that the statute contains any definition of "automobile." Accordingly, there is no persuasive reason why the word "automobile" as it is used in this policy should be construed to mean the same thing as a motor vehicle under the Illinois Motor Vehicle Law. In the *Hartford* case, *supra*, the court found that the statutory requirements for uninsured motorist coverage required that coverage be provided for injuries resulting from an "uninsured motor vehicle." They, therefore, found that the language in a policy with respect to injury by an "uninsured automobile," in light of the statute, must include a motor scooter which it said was, beyond argument, a motor vehicle. In this case the court pointed out that, "It cannot be assumed that the term 'automobile' does not include a motor scooter. However, the real issue in this case does not turn on construction of the word as used in the policy, but rather upon the statute which requires a policy to afford protection against uninsured motorists."

■■ The rationale applicable to the *Hartford* case does not apply here because it is not necessary to expand the word "automobile" to include all forms of motor vehicles in order to comply with the requirements of the statute. This is an exclusion and the statute does not require that certain parties or vehicles be excluded. On the face of the matter, it may seem unfair to expand the word "automobile" to bind the insurance company on the one hand and not to expand it to include a motor vehicle on the other hand, but this is a legal necessity arising from the rules of construction. The company by express words of exclusion could have included motor vehicles, motorcycles, motor scooters and the like within its exclusion. Apparently it did not intend to. The intention of a party to the contract cannot be ascertained by seeing what attitude they take when they bring a lawsuit with regard to the construction of the policy. If a party had read his policy, he would understand that he was covered in this instance. This is particularly persuasive where the evidence shows that the plaintiff insurance company did not insure motorcycles. The named insured and relatives could not have bought such a coverage

from the plaintiff. Therefore, they did not omit to buy this coverage from the plaintiff thereby depriving it of a premium. It may even be, by making its policy provisions more liberal than the minimum required by law, that the plaintiff sought to attract customers who, impressed by the breadth of its coverage, might insure other vehicles with the plaintiff. After all, if this motorcycle had not been owned by the resident insured, he would have been covered in any case. We recognize that our result disagrees with the result obtained in the *McElyea* case, *supra*, but this particular question was not raised in that case and was evidently not considered by the court.

Judgment affirmed.

EBERSPACHER, P. J., and CREBS, J., concur.